UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DOUGLAS SILVA                :
                                  :
           v.                  :       C.A. No. 04-429A
                                    :
JO ANNE B. BARNHART,       :
Commissioner, Social Security     :
Administration                :

## MEMORANDUM AND ORDER

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Social Security Disability Insurance ("SSDI") benefits under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on October 6, 2004 seeking to reverse the decision of the Commissioner. Plaintiff has filed a Motion seeking to reverse the Commissioner's decision and/or remand for further proceedings under sentence four of 42 U.S.C. § 405(g). The Commissioner has filed a Motion to Affirm her decision. With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon my review of the entire record, my independent legal research, and the legal memoranda filed by the parties, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I order that the Commissioner's Motion to Affirm (Document No. 11) be GRANTED and that Plaintiff's Motion to Reverse and/or Remand (Document No. 9) be DENIED.

## I.   PROCEDURAL HISTORY

Plaintiff filed an application for SSDI benefits on December 10, 2001 alleging disability since March 22, 2001. (Tr. 78-80). The application was denied initially (Tr. 49-52) and on reconsideration. (Tr. 55-58). On November 10, 2003, a hearing was held before Administrative Law Judge (the "ALJ") V. Paul McGinn, at which Plaintiff, represented by counsel, an impartial medical expert and a vocational expert, testified. (Tr. 26-46). The ALJ issued his decision on April 2, 2004, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 13-22). The Appeals Council denied Plaintiff's request for review on August 27, 2004 (Tr. 5-8), rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review.[1] A timely appeal was then filed with this Court.

## II.   THE PARTIES' POSITIONS

Plaintiff argues that the Commissioner's decision should be reversed because the ALJ erred in relying on the "grids" and not obtaining vocational expert testimony regarding Plaintiff's ability to perform other work in the national economy. Plaintiff also argues that the ALJ erred both factually and legally in failing to properly note and consider the side effects of Plaintiff's medications. Finally, Plaintiff claims that the ALJ's finding that he "engaged in substantial gainful activity" since the onset of his alleged disability is not supported by substantial evidence. The Commissioner disputes Plaintiff's claims and argues that there is substantial evidence in the record as a whole to support her decision that Plaintiff is not entitled to disability benefits.

---

[1] On August 25, 2004, Plaintiff's current counsel submitted a letter brief to the Appeals Council arguing, in part, that Plaintiff was alleging "severe psychiatric impairment" (depression and anxiety) which the ALJ "neglected to develop." (Ex. AC-1). At the hearing, Plaintiff's prior counsel never argued a psychiatric impairment and did not elicit any testimony from Plaintiff or the impartial medical expert to support such a claim. There is absolutely no basis in the record to support a claim of psychiatric impairment and it suggests to me Plaintiff is grasping at straws.

### III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for

failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-92 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV.   DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.   Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.      Developing the Record**

The ALJ has a duty to fully and fairly develop the record.    Heggarty v. Sullivan, 947 F.2d

990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right

to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of

that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human

Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by

counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained

counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty,

947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir.

1980).

**C.      Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's

medical sources do not give sufficient medical evidence about an impairment to determine whether

the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir.

1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a

consultative examination unless the record establishes that such an examination is necessary to

enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs.,

758 F.2d 14, 17 (1st Cir. 1985).

**D.      The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§

404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)    Treatment, other than medication, for relief of pain;
>
> (5)    Functional restrictions; and
>
> (6)    The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### V. APPLICATION AND ANALYSIS

Plaintiff was forty-eight years old on the date the ALJ issued his decision. (Tr. 47). Plaintiff has a high school equivalent (G.E.D.) education and past work history as a delivery truck driver and warehouse worker. (Tr. 31, 38, 45). Plaintiff alleges that he became disabled on March 22, 2001, due to a fractured vertebrae in his neck which required surgery on March 28, 2001. (Tr. 28, 163).

Plaintiff initially received workers' compensation benefits as a result of his neck injury and later settled his case for a lump-sum payment. (Tr. 29, 31). Plaintiff has not fully returned to his past work, although he did return to his former employer for a short period in 2003 doing "very light deliveries" in the "company car" or "pickup truck." (Tr. 30-32). Plaintiff worked in this "light" capacity for seventeen weeks between July 16 and November 5, 2003. (Ex. 5F). During this period, Plaintiff averaged nearly twelve hours worked per week and a weekly net pay of approximately $155.00. Id. Plaintiff lives with his wife and adult son. (Tr. 29). Plaintiff's wife works part-time. (Tr. 34). Plaintiff assists with the household laundry (moving from washer to dryer / folding dry clothes). Id. Plaintiff is able to drive up to forty miles before needing to stop, and he occasionally drives his motorcycle for short distances. (Tr. 35). Plaintiff is able to run store errands and was able to travel to and attend a baseball game at Fenway Park. (Tr. 34-35). In describing his "usual activities" in a form completed on January 9, 2002, Plaintiff indicated that, "on a typical day," he could perform self care, dust, vacuum, fold laundry, "sit for a while," shop, wash a floor, "possibly cut grass" and hose off a car. (Exs. 6E and 7E).

A.   The ALJ Appropriately Looked to the "Grids" in Making His Disability Determination

After determining that Plaintiff was unable to return to his past "medium and heavy" warehouse and delivery work, the ALJ proceeded to Step 5 of the sequential analysis and determined that Plaintiff was not disabled based on the "grids." (Tr. 20-22). A vocational expert ("VE") appeared and testified at the hearing in response to questioning by the ALJ but solely as to Plaintiff's past work history. (Tr. 45). The ALJ did not pose a hypothetical question to the VE regarding Plaintiff's current functional capacity. Plaintiff's counsel did not object at the time and expressly

-12-

declined the ALJ's offers to question the VE on "job classification" or "at all on anything." (Tr. 46).

Now, on appeal, Plaintiff argues that the ALJ erred in relying on the "grids" and was required to pose

a hypothetical to the VE due to the presence of nonexertional limitations.

The "grids" are intended to simplify the determination of disability. The "grids" are a chart

which determines disability based on a claimant's physical capacity, age, education and work

experience. Where a claimant has a nonexertional impairment in addition to an exertional limit,

reliance on the "grids" depends upon whether Plaintiff's nonexertional impairment, if any,

"significantly affects" his ability to perform a full range of jobs at the particular strength level.

Heggarty, 947 F.2d at 996; Lugo v. Sec'y of Health and Human Servs., 794 F.2d 14, 17 (1st Cir.

1986).

Plaintiff argues that the record supports that he has nonexertional "reaching and handling

limitations" which preclude reliance on the "grids." The Commissioner disagrees contending that

those nonexertional limitations were not significantly limiting and thus the ALJ correctly applied the

"grids." This is not a case, such as Heggarty, in which a VE was not even present to testify at the

hearing. The VE was present and testified. Neither the ALJ nor Plaintiff's counsel elected to pose

a hypothetical to the VE. Viewing the record in its entirety, this Court concludes that the ALJ did

not commit error in utilizing the "grids."

In support of his argument, Plaintiff cites to the report of William J. Golini, M.D., a

neurologist, who indicated that Plaintiff has "cervical radiculopathy." (Ex. 10F). Plaintiff fails,

however, to point out that Doctor Golini described Plaintiff's carpal tunnel as "mild" and his

radiculopathy as "very mild." Id. Doctor Golini reported that Plaintiff's nerve conduction studies

were "normal" with the exception of "a mildly prolonged right median motor distal latency at 4.5

msec." Id. Doctor Golini concluded that his neurological examination did "not demonstrate any significant focal neurological deficits in reference to [Plaintiff's] cervical disc disease" and he concurred with continued conservative treatment. Id. This report simply does not objectively support Plaintiff's argument.

Plaintiff also refers to two physical residual functional capacity assessments completed by nonexamining consultants. (Exs. 6F and 8F). Although both noted reaching limitations, only one (Stephen R. Fish, M.D.) provided the required description – "limit frequent overhead reaching." (Tr. 205). Again, this does not objectively support Plaintiff's argument. Further, as to handling limitations, both assessments found that Plaintiff had no limitations. (Tr. 205, 219).

Finally, Plaintiff argues that his argument is supported by the medical expert's testimony that Plaintiff avoid "repetitive hand motions." (Tr. 44). Again, Plaintiff fails to point out that the medical expert described Plaintiff's radiculopathy and carpal tunnel as "mild," (Tr. 44), and also that the medical expert discounted the physical capacities evaluation completed by Nicholas Turilli, D.O., as containing "inconsistencies" and being primarily grounded on Plaintiff's subjective complaints. Id. The ALJ exercised his discretion to discount the weight accorded to Doctor Turilli's opinion based on the medical expert's testimony and his own finding that Plaintiff's allegations regarding his limitations are "not totally credible." (Tr. 19-22).

Viewing the record in its entirety, there is substantial evidence supporting the ALJ's reliance on the "grids." There is substantial evidence supporting a finding that Plaintiff's nonexertional limitations were not significant or substantial enough to preclude reliance on the "grids."[2] See, e.g.,

---

[2] In a footnote, Plaintiff contends that the ALJ also erred in not obtaining VE testimony in light of his pain. Other than citing to a single First Circuit case, Nguyen, Plaintiff does not elaborate on this argument or point to any supporting evidence in the administrative record. Plaintiff is represented by counsel and this Court is not obligated to

Falcon-Cartagena v. Comm'r of Social Sec., 2001 WL 1263658 at *2 (1st Cir. 2001) (restriction on overhead reaching not significant enough to preclude reliance on grids).

## B.   The ALJ Correctly Evaluated the Side Effects of Plaintiff's Medications

At the hearing, the medical expert was questioned by Plaintiff's counsel regarding medications. The medical expert testified that Plaintiff's Neurontin dosage was "not very big" and that his Prozac was merely to "calm [him] down." (Tr. 42).   The medical expert also noted that Plaintiff's Amitriptyline is to assist with sleeping, and Plaintiff confirmed that he only took it once a day at night to go to sleep. (Tr. 42-43).

The ALJ stated that Plaintiff was taking "no narcotic pain medication." (Tr. 20).   Plaintiff correctly points out that the record indicates that on one occasion in May 2003, Doctor Turilli prescribed Tylenol #3 (which contains a narcotic Codeine and is regulated as a Schedule III controlled substance). (Tr. 236). There is apparently no other reference in the record to this medication and no evidence as to whether Plaintiff is actually taking Tylenol #3 and, if so, the frequency and dosage. (Tr. 37-38). Although the record could be clearer on this issue, this Court believes that the ALJ's apparent misstatement in this regard is, at worst, harmless error.

Although Plaintiff's counsel elicited detailed testimony regarding Plaintiff's other medications, he apparently did not believe that the Tylenol #3 was important enough to address in detail. (Tr. 37-38). Plaintiff's counsel also directed questions to the medical expert about Plaintiff's use of Prozac, Neurontin and Amitriptyline, but again chose not to specifically ask him about Plaintiff's use, if any, of Tylenol #3. (Tr. 42-43).   The ALJ expressly discounted Plaintiff's

---

scour the record to make Plaintiff's arguments for him. Further, the record does not support a finding of significant limitations due to pain. See, e.g., Tr. 234 (Doctor Turilli described Plaintiff's pain as "mild").

-15-

credibility and noted that "his purported level of pain and loss of functioning is not consistent with the evidence or [his] statements to medical sources." (Tr. 20). The ALJ's negative credibility assessment is supported by substantial evidence and includes his assessment of Plaintiff's testimony about medication side effects. The ALJ did not err in this regard.

C.     The ALJ Did Not Err in Considering Plaintiff's Post-disability Work History

Plaintiff's final argument merits little discussion. As noted above, Plaintiff returned to work in a light-duty capacity for a few months in 2003. (Ex. 5D). Although the ALJ referred to Plaintiff's return to work, he specifically states that he "declines to deny disability based on [such] work activity." (Tr. 17). The ALJ also relied on Plaintiff's return to light duty in 2003 to partially support his credibility determination and his finding that Plaintiff retained the RFC to perform "at least light exertion." (Tr. 20). The ALJ's ultimate finding of no disability is supported by substantial evidence, and any error related to consideration of Plaintiff's 2003 work activity is, at worst, harmless.

## VI.     CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion to Affirm (Document No. 11) be GRANTED and that the Plaintiff's Motion to Reverse and/or Remand (Document No. 9) be DENIED. Final Judgment shall enter in favor of the Commissioner.

LINCOLN D. ALMOND
United States Magistrate Judge
August 5, 2005

-16-